# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

**FILED**

DEC 11 2013

Clerk, U.S. District Court
District Of Montana
Billings

|  |  |
|---|---|
| **LOUISE KING, individually, and as Personal Representative of the Estate of Case Timothy King,** | |
| Plaintiff, | |
| v. | Cause No. CV **12-92-BLG-RWA** |
| **GEICO INSURANCE COMPANY,** | **O R D E R** |
| Defendant. | |

## I. Introduction

Plaintiff Louise King ("Louise") filed on June 18, 2012, a Complaint and Demand for Jury Trial in the Montana Thirteenth Judicial District Court, Yellowstone County, seeking a "declaration of his [sic] rights, status and legal relations with respect to Defendant GEICO Indemnity Company[1] ("GEICO") pursuant to GEICO Policy No. 4163-66-5-67[,]" and averring two additional claims for relief: Count Two (Breach of Contract); and Count Three (violations under Montana's Unfair Trade Practices Act), stemming from GEICO's failure to

---

[1] GEICO Indemnity Company is misnamed in the caption as GEICO Insurance Company.

1

unconditionally pay Louise the underinsured benefits due under GEICO Policy No. 4163-66-5-67. The matter was removed to this Court on July 25, 2012. Trial is scheduled to commence on February 24, 2014.

Louise filed a Motion for Partial Summary Judgment on June 27, 2013, seeking a declaration from this Court regarding the rights and obligations of the parties under GEICO's underinsured motorist ("UIM") contract (Count One), along with this Court's judgment that, by virtue of the manner in which GEICO has handled Louise's claim, GEICO has breached its contract (Count Two) and violated subsections (1), (6), and (13) of MONT. CODE ANN. ("MCA") § 33-18-201, (Count Three)[2], as a matter of law. GEICO filed a Motion for Summary Judgment on July 29, 2013, arguing Louise is not entitled to the "each occurrence underinsured limits." GEICO maintains summary judgment in its favor is appropriate because under Montana law, GEICO was entitled to seek a release before paying Louise $100,000. Both motions for summary judgment are accompanied by statements of undisputed facts and supporting briefs. Louise filed a reply on August 16, 2013, and GEICO filed a reply on September 11, 2013.

Thereafter, Louise filed on October 31, 2013, a motion for oral argument,

---

[2] King's Complaint alleges GEICO also violated subsections (4), (5), and (9) of MCA § 33-18-201.

which motion the Court granted over the objection of GEICO.  Oral argument was held November 25, 2013, in Billings.  L. Randall Bishop of Billings, Montana argued on behalf of Louise, and Gerry Fagan of Billings, Montana argued on behalf of GEICO.  The cross-motions for summary judgment are now ready for decision.  For the reasons discussed below, the Court enters a declaration regarding the rights and obligations of the parties, grants Louise's request for summary judgment on her breach of contract claim, and denies summary judgment on her bad faith claims.  The Court also grants GEICO's request for summary judgment on Louise's claims under MCA § 33-18-201(4), (5), and (9), and denies its Motion in all other respects.

## II. Factual Background

GEICO issued a motor vehicle liability policy numbered 4163-66-55-67 ("the Policy) to Timothy King which covered two motorcycles.  Pursuant to the Declaration Page, Timothy King's policy with GEICO provided the following UIM coverage on two vehicles:

| **Coverages** | **Limits and/or Deductibles** |
| --- | --- |
| Uninsured/Underinsured Motorists Each Person/Each Occurrence | $50,000/$100,000 |

"Part IV – Uninsured Motorists Coverage" of the Policy provides, in part:

3

We will pay damages which a *covered person* is legally entitled to recover from the owner or operator of an ***uninsured motor vehicle*** because of bodily injury sustained by a *covered person* and caused by an accident . . .

* * *

The insurance afforded under this Part applies separately to each *covered person*, but the inclusion of more than one *covered person* shall not increase the limit of our liability.

*Covered person*, as used in this Part means:

1.   *You,* any *family member* or any other person *occupying your covered cycle.*

2.   Any person who is entitled to recover damages because of bodily injury sustained by a person described in 1 above.

*Uninsured motor vehicle* means a land motor vehicle or trailer of any type:

* * *

4.   Which is an ***underinsured motor vehicle***, as defined.

* * *

"*Underinsured motor vehicle*" means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accidence is less than the limits of liability under this coverage.

(Emphasis in the Policy).  The "Limits of Liability" section of Part IV of the

Policy also provides, in pertinent part:

1.     The limit of bodily injury liability shown on the Declarations as applying to "each person" is the maximum *we* will pay for all damages sustained by one person as a result of one accident covered by this Part.

2.     Subject to the limit stated above for each person, the limit of liability shown as applying to "each accident" is the maximum *we* will pay for all damages covered by this Part arising out of bodily injury in any one accident.

\* \* \*

*We* shall not be obligated to make any payment because of ***bodily injury*** to which this Insurance applies and which arises out of the ownership, maintenance or use of an ***underinsured motor vehicle*** until after the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements.

(Emphasis in the Policy).

The Definition section of the Policy provides that the term "bodily injury" means "bodily injury, sickness or disease, including death which results from the injury." The Policy was in effect on August 27, 2011, when Timothy King was involved in a motorcycle collision that resulted in his death. Louise, who was married to Timothy King on the date of the accident, was not involved in the accident, did not witness the accident, and did not suffer any bodily injury as a result of the accident.

The driver who caused the accident that resulted in Timothy King's death

5

was an underinsured driver within the meaning of the Policy. After learning that the driver who caused the accident was underinsured, Louise contacted GEICO and requested payment of all UIM benefits due and owing under the Policy. As noted above, the policy provides $50,000.00 in "each person" limits and $100,000 in "each occurrence" limits.

On January 10, 2012, Louise sent GEICO the following email:

> I am writing to ask that we expedite the completion of this case. We have faxed and telephoned information back and forth for some time now. If you need anything further from me, please let me know. We settled the claim on the motorcycle itself back in October.

See Docket Entry No. 35-1, p. 22 of 36. During a telephone conversation on either February 17, 2012, or February 20, 2012, Janae Estill, on behalf of GEICO, offered to pay the Estate of Timothy King the full "each person" limits of $100,000 (two stacked $50,000 coverages) in exchange for a release of all other claims under the GEICO policy. Louise asked for the offer in writing and said she would let GEICO know whether or not she would accept such offer.

On February 29, 2012, Louise called GEICO back and told Janae Estill that she was not ready to accept the offer and that she was still trying to process things in her head. Louise told Estill that she would call back at a later time. GEICO subsequently received a letter from Louise dated February 29, 2012, wherein she

indicated her unwillingness to sign a release. Instead, Louise agreed to give

GEICO a signed acknowledgment of receipt of payment which was attached to her

letter. Louise's proposed acknowledgment of receipt read:

> Louise King, individually and on behalf of the Estate of
> Timothy W. King, and her heirs, administrators, executors and agents,
> hereby acknowledge receipt of $100,000, representing underinsured
> motorist benefits paid under that certain insurance Policy No. 4163-
> 66-55-67, issued by GEICO Indemnity Company to Timothy Wayne
> King, said benefits being due and payable as compensation for
> injuries and losses suffered in an automobile wreck caused by Paul
> Moe, an uninsured/underinsured driver, on August 27, 2011, on U.S.
> Highway 310, in Carbon County, Montana.

*See* Docket Entry No. 35-1, p. 25 of 36. In that same letter of February 29, 2012,

Louise wrote: "I have decided to give GEICO 10 days from its receipt of this letter

to get me a check for $100,000. If GEICO fails to do so, I will turn this whole

frustrating affair over to an attorney." *See* Docket Entry No. 35-1, p. 24 of 36.

On March 12, 2012, Estill sent Louise the following email:

> This email will confirm your letter dated 2/29/2012, I wanted you to
> know we need legal documentation to speak to if you are the personal
> representative over the estate of Timothy King, this information will
> be needed before any payment can be made. As far as a release being
> obtained, we do feel we have a right to ask for one, so please contact
> me so we can discuss this matter further.

*See* Docket Entry No. 35-1, p. 27 of 36. Estill also contacted legal counsel in

Montana for further assistance with the claim.

7

On or about March 15, 2012, GEICO received a letter from Louise which was accompanied by documentation showing that Louise was the personal representative of the Estate of Timothy King and also indicating that she wanted to know whether GEICO would pay the $100,000 without a release. Since Louise was still refusing to sign a release, Ms. Estill sent GEICO's claim file to its Montana legal counsel for further handling.

After consultation with Montana legal counsel, GEICO issued a check to the Estate of Timothy King for $100,000 which was sent by GEICO's legal counsel to Louise on April 20, 2012. GEICO's counsel, John E. Bohyer explained in a letter that accompanied the check:

> To be clear, you are not being asked to release any and all claims that you as an individual may have under the underinsured motorist coverage of the GEICO policy. The only release that needs to be executed by you is a release for the wrongful death and survival claims that could be advanced by the Personal Representative. This release is in return for the $100,000 stacked "per person" limit available under the GEICO policy. There is a $200,000 "per accident" limit under the policy as well. You, individually, are entitled to reserve your own bodily injury claim and to assert that claim if you believe it exits.

> If my letter does not make sense, I ask that you please consult with your own counsel of the matter. In this regard, there are two cases that are pertinent to the release and payment issue. *State Farm Mut. Auto Ins. Co. v. Bowen*, 34 Mont.Fed.Rptr 1 (D.Mont. 2005 Judge Cebull); 247 Fed. Appx. 901 (9th Cir. 2007); and *Adair v. Safeco Ins. Co. of Illinois*, CV-09-32-BU-RKS (D.Mont. 8/31/10,

Judge Strong) (Order *in Limine*).  I have attached copies of both of these decisions so that you may review and discuss them with your lawyer as needed.  In short, the two decisions allow the recovery on one "per person" limit–here $100,000–under the underinsured motorist coverage of the policy for the wrongful death and survival claim.  As well, because the $100,000 is full performance with respect to those claims, the insurer is entitled to a release for those claims as discussed in the Adair opinion.

GEICO is not asking that you release any ***individual*** claim for bodily injury that you believe you may have under the insurance policy in question.

*See* Docket Entry No. 35-1, p. 32 of 36 (emphasis in original).  Along with the check for $100,000 and the letter, attorney Bohyer also included a General Release, which provided, in part:

**RELEASOR:** Annie Louise Holmes King, P.R. for the Estate of Timothy W. King, its heirs, executors, personal representatives, successors, and assigns.

\* \* \*

**1.** **Release**

The undersigned Releasor acknowledges receipt of the above sum of money, and in consideration for payment of such sum, fully and forever releases and discharges Releasee, Releasee's, successors, assigns, agents, partners, employees, and attorneys from any and all actions, claims, causes of action, demands, or expenses for damages or injuries, whether asserted or unasserted, known or unknown, foreseen or unforeseen, arising out of the described casualty.

## 2. Partial Release

This Release is partial and applies only to one stacked underinsured motorist coverage limit as set forth in the Policy. Annie Louise Holmes King specifically reserves unto herself any other claim for own bodily injury, and such claim is not released under the terms of this document.

Louise did not deposit GEICO's check or respond to GEICO's offer of payment. Instead, Louise filed this pending lawsuit against GEICO. GEICO maintains that it was only through discovery that it learned that Louise believes she has her own personal UIM coverage for negligent infliction of severe emotional distress.

## III. Analysis

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d

265 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id.*; *see also Russell v. Daiichi–Sankyo, Inc.*, 2012 WL 1793226 (D.Mont. May 15, 2012).

When presented with cross motions for summary judgment on the same matters, the court must "evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *American Civil Liberties Union of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

## B. Declaratory Relief

In Count One of her complaint, Louise seeks a declaration of her rights under the Policy. Louise contends that two claims arose out of Timothy King's motorcycle accident on August 27, 2011: "The first claim was for wrongful death and survival, and it arose in favor of Timothy King's Estate. The second claim was individual to [Timothy King]'s widow, Louise King, for emotional distress suffered as a consequence of her husband's horrible death." Louise's Reply Brief, docket entry no. 41, p.2. GEICO does not dispute that the Estate of Timothy King

11

has a claim of $100,000 under the Policy, but argues Louise has no other claim under the Policy because Louise did not personally suffer any bodily injury.

Whether Louise has an individual claim for her emotional distress is determined by the specific language of the Policy. The interpretation of insurance contracts is a question of law for the Court, *Babcock v. Farmers Ins. Exchange*, 999 P.2d 348 (Mont. 2000), and in Montana is well established:

> This Court has repeatedly held that general rules of contract law apply to insurance policies and that we will construe those policies strictly against the insurer and in favor of the insured. *Travelers Cas. v. Ribi Immunochem Research*, 2005 MT 50, ¶ 17, 326 Mont. 174, 108 P.3d 469. Moreover, the interpretation of an insurance contract is a question of law. *Park Place Apartments v. Farmers Union*, 2010 MT 270, ¶ 12, 358 Mont. 394, 247 P.3d 236 (citing *Cusenbary v. U.S. Fidelity and Guar. Co.*, 2001 MT 261, ¶ 9, 307 Mont. 238, 37 P.3d 67; *Babcock v. Farmers Ins. Exchange*, 2000 MT 114, ¶ 5, 299 Mont. 407, 999 P.2d 347). When a court reviews an insurance policy, it is bound to interpret its terms according to their usual, common sense meaning as viewed from the perspective of a reasonable consumer of insurance products. *Park Place*, ¶ 12 (citing *Counterpoint, Inc. v. Essex Ins. Co.*, 1998 MT 251, ¶ 13, 291 Mont. 189, 967 P.2d 393). Exclusions from coverage are to be narrowly and strictly construed because they are contrary to the fundamental protective purpose of an insurance policy. *Park Place*, ¶ 12 (citing *Swank Enterprises v. All Purpose Services*, 2007 MT 57, ¶ 27, 336 Mont. 197, 154 P.3d 52).

> When an insurance policy is ambiguous, it is to be interpreted most strongly in favor of the insured and any doubts as to coverage are to be resolved in favor of extending coverage for the insured. *Park Place*, ¶ 13 (citing *Mitchell v. State Farm Ins. Co.*, 2003 MT 102, ¶ 26, 315 Mont. 281, 68 P.3d 703). An ambiguity exists where

the insurance contract, taken as a whole, is reasonably subject to two different interpretations. *Park Place,¶* 13 (citing *Mitchell,* ¶ 26). However, when the language of a policy is clear and explicit, the policy should be enforced as written. *United Nat. Ins. v. St. Paul Fire & Marine,* 2009 MT 269, ¶ 12, 352 Mont. 105, 214 P.3d 1260 (citing *National Cas. Co. v. American Bankers,* 2001 MT 28, ¶¶ 13, 304 Mont. 163, 19 P.3d 223). We cautioned in *Travelers* that courts should not "seize upon certain and definite covenants expressed in plain English with violent hands, and distort them so as to include a risk clearly excluded by the insurance contract." *Travelers,* ¶ 17 (quoting *Johnson v. Equitable Fire & Marine Ins. Co.,* 142 Mont. 128, 131, 381 P.2d 778, 779 (1963)).

*Steadele v. Colony Ins. Co.,* 2011 MT 208, 361 Mont. 459, 260 P.3d 145.

It is with these principles in mind that the Court considers the terms of the Policy at issue here. Relying on *Sacco v. High Country Indep. Press,* 271 Mont. 209, 896 P.2d 411 (1995), and *Wages v. First Natl. Ins. Co. of Am.,* 2003 MT 309, 318 Mont. 232, 79 P.3d 1095, Louise argues that as a covered person under the Policy, she is entitled to a stand alone claim of negligent infliction of emotional distress, even though she did not witness her husband's death and sustained no bodily injury.

In *Sacco,* the Supreme Court of Montana held that a claim for negligent infliction of emotional distress was a separate and distinct tort that could be pled and proved as an independent, stand alone cause of action. The Court in *Sacco* explained:

A cause of action for negligent infliction of emotional distress will arise under circumstances where serious or severe emotional distress to the plaintiff was the reasonably foreseeable consequence of the defendant's negligent act or omission.

*Sacco*, 271 Mont. at 232.

Eight years later, in *Wages*, the Supreme Court of Montana was faced with the issue of "whether Wages, as the father of a minor child who did not witness the accident that resulted in his child being seriously injured, is entitled to maintain an independent, non-derivative claim for negligent infliction of emotional distress." *Wages*, 318 Mont. at 235. The Court, concluding that Wages could be a foreseeable plaintiff to whom a duty was owed, explained:

This Court has long held that the existence of a legal duty is a matter of law to be determined by the court. As an element of duty, foreseeability must be determined by the court as well. In the case before us the District Court concluded that Wages was not a foreseeable plaintiff because he had not witnessed the accident and, therefore, as a matter of law, Pegar owed no duty to him.

The District Court reached this conclusion by erroneously interpreting and applying [*Treichel v. State Farm Mut. Auto. Ins. Co.*, 280 Mont. 443, 930 P.2d 661 (1997)]. As we explained above, it should have applied *Sacco*. In *Sacco*, we severed the previously mandatory nexus between witnessing the accident and foreseeability, and established that a defendant can owe a duty to a NIED claimant even in circumstances where the claimant was not at the scene of the accident. Therefore, the District Court erred in premising its conclusions solely on the fact that Wages did not witness the accident. For this reason, we reverse and remand this matter to the District Court to determine once again, under *Sacco* and not *Treichel*,

whether Wages was a foreseeable plaintiff.

*Wages*, 318 Mont. at 239 (citations omitted).

GEICO argues that *Sacco* and *Wages* are factually distinguishable and that under *Treichel, supra*, and *Bain v. Gleason*, 223 Mont. 442, 726 P.2d 1153 (1986), Louise's emotional distress claim does not, in and of itself, trigger the "each occurrence" limits of the Policy.

The Court agrees that in Montana, an emotional distress claim is a separate stand alone claim. The issue thus is whether Louise's emotional distress claim is derivative of Timothy King's claim, or whether her claim is a stand alone claim that is compensable as such under the Policy.

In *Bain*, the plaintiff's wife was injured by a negligent driver who was insured under a $25,000 per person and $50,000 per accident policy. *Bain*, 223 Mont. at 444. The insurer paid the $25,000 per person limit, arguing that it constituted the "full extent of and the limit" of coverage under its policy. *Bain*, 223 Mont. at 445. The husband, who was not present at the scene of the accident, brought a separate claim for loss of consortium seeking to recover the additional $25,000 under the per accident limit. The policy limited the insurer's liability applicable to "each person" to $25,000 "for all damages arising out of bodily injury sustained by one person in any one occurrence." *Bain*, 223 Mont. at 447.

The Supreme Court of Montana rejected the husband's claim, finding it was "plain under our statutes, and under the policy provisions here that the 'each person' limitation refers to all damages imposed by law by whomever suffered resulting from one bodily injury and one accident; the 'each accident' limitation applies when two or more persons suffer bodily injury in the same accident." *Bain*, 223 Mont. at 451.

*Treichel* was a later automobile liability policy case that limited coverage to $25,000 per person and $50,000 per accident. *Treichel*, 280 Mont. at 445. In that case, a husband and wife were riding bicycles. The husband was struck by an automobile from behind and subsequently died from the injuries he sustained. The wife witnessed the automobile hit her husband. The insurer of the automobile paid the husband's estate the per person coverage of $25,000 but denied the wife's claim for emotional distress. The Supreme Court of Montana distinguished *Bain* and found that the wife sustained "an independent and direct injury at the accident scene" stemming from the personal trauma she experienced from witnessing her husband's accident and the injuries he sustained therefrom. *Treichel*, 280 Mont. at 449.

*Bain* and *Treichel* were decided according to the specific language of the

applicable public liability insurance policies.[3] The decision in this case is similarly determined by the specific language of the Policy coupled with the specific non derivative nature of Louise's severe emotional distress claim. At the hearing, counsel for Louise explained that Louise requests immediate payment of the $100,000 admittedly due to the Estate of Timothy King without having to sign a full release. Louise intends to preserve her emotional distress claim, which she has not yet established. Louise's counsel argued the Policy is clear and unambiguous and that GEICO breached its insurance contract by failing to pay $100,000 to Louise as personal representative of the Estate of Timothy King and that GEICO has misrepresented coverage under the Policy, did not effectuate a prompt, fair and equitable settlement of the $100,000 owed to the Estate of Timothy King, and sought to use the $100,000 owed to the Estate of Timothy King as leverage to obtain a release of Louise's emotional distress claim.

Counsel for GEICO disagreed and directed the Court to language found on page 4 of the Policy, which reads:

---

[3] GEICO relies also on *State Farm Mutual Auto. Ins. Co. v. Bowen*, D.C. No. CV-04-00063-RFC (D.Mont. 2005) as Montana federal authority supporting its position. Other than reaffirming *Bain* as the controlling Montana law, under the public liability provisions of the State Farm policy, *Bowen* is not factually similar to the present case. It adds nothing to the issue whether GEICO's UIM policy involved here requires separate bodily injury to one who is claiming damages only for severe emotional distress.

1. The limit of bodily injury liability shown on the Declarations as applying to "each person" is the maximum *we* will pay for all injuries or damages sustained by one person as a result of one *motorcycle* occurrence. The limit of *our* liability shown as applying to "each occurrence" is, subject to the above provision respecting each person, the maximum *we* will pay for all damages arising out of bodily injury sustained by two or more persons as the result of any one *motorcycle* occurrence.

(Emphasis in the Policy).

The foregoing language falls under "Part I - Liability Coverages (Bodily Injury and Property Damage" of the Policy. A common sense reading of the Declaration Page of the Policy and the Policy itself shows that the limits of liability language referenced by GEICO's counsel relates only to the public liability coverage provided under the Policy, and not to the uninsured or underinsured coverage of the Policy. The coverage at issue in this case is specifically addressed under Part IV of the Policy.

GEICO argues in its brief that Louise does not fall within the confines of the UIM insuring clause of the Policy and that Louise is unreasonably attempting to twist the insuring clause of Part IV of the Policy to fit her circumstances. Part IV of the Policy provides:

*We* will pay damages which a *covered person* is legally entitled to recover from the owner or operator or an *uninsured motor vehicle* because of bodily injury sustained by a *covered person* and caused by an accident.

18

The Policy defines a covered person as:

> 1. *You*, any *family member* or any other person *occupying your covered cycle*.

> 2. Any person who is entitled to recover damages because of bodily injury sustained by a person described in 1 above.

GEICO argues it is "patently evident that the first 'covered person' [in the insuring clause] is meant to be the same 'covered person' the second time." The Court disagrees. The insuring clause must be read in conjunction with the definition of covered person. Timothy King was a covered person under the first definition of a covered person. Louise, on the other hand, is a covered person under the second definition if she would be entitled to recover damages in her own right against the driver of the motor vehicle that struck and killed Timothy King. As explained in *Sacco*, Louise has a cause of action if (1) her serious or severe emotional distress was (2) the reasonably foreseeable consequence of (3) the negligent or intentional act or omission of the driver who caused the accident that resulted in Timothy King's death. *See Sacco*, 271 Mont. at 234. On this issue, "[i]t is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed." *Sacco*, 896 P.2d at 425.

Under the test articulated in *Sacco*, the Court finds that Louise's claim of serious or severe emotional distress was reasonably foreseeable. Louise and Timothy King were husband and wife, and Timothy King was killed when the motorcycle he was riding was struck head-on by another vehicle. Louise was thus a foreseeable plaintiff to whom a duty was owed. Louise is consequently a covered person under the second prong of the definition of "covered person" in the Policy.

When the UIM insuring clause and the definition of "covered person" are read together, it is clear that GEICO agreed to pay damages which a covered person, whether it be Louise or Timothy King, is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by a covered person, in this case Timothy King. The limits of liability language found at page 4 of the Policy simply has no application to the issue in this case.

Furthermore, GEICO's reliance on *Bain v. Gleason*, 223 Mont. 442, is misplaced. The language of the UIM Policy at issue here is distinguishable from the policy language in *Bain*, which language dealt specifically with bodily injury liability coverage as required under MCA § 61-6-301. The court in *Bain* first examined Montana's mandatory insurance statutes and then looked at the terms of

20

the insurance policy and concluded the policy terms were in compliance with Montana's mandatory motor vehicle insurance law. While Montana's mandatory insurance law did not define "bodily injury," the policy defined "bodily injury" as "bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by a person." The policy limited bodily injury liability applicable to "each person" as "the limit of the Company's liability for all damages arising our of bodily injury sustained by one person in any one occurrence," and limited bodily injury liability applicable to "each occurrence" to "the total limit of the Company's liability for all damages arising our of bodily injury sustained by two or more persons in any one occurrence." *Bain*, 223 Mont. at 447.

The court in *Bain* concluded "that the cause of action for loss of consortium by the deprived spouse and the cause of action for bodily injuries by the injured spouse are subject together to the 'one person limitation' found in § 61-6-103, MCA, as referred to in § 61-6-301, MCA." *Id.* at 450. The court then turned to the terms of the policy to determine whether that "particular insurance policy granted additional coverage to a cause of action for consortium, either by direct policy provision or by inartful drafting." *Id.* The court proceeded to discuss three cases that required coverage for loss of consortium beyond the "one person," or

"each person" limitations, and found that in one case, bodily injury was defined as loss of services, which could include loss of consortium. In the second case, the *Bain* Court noted that the insuring language did not limit the "each accident" clause to bodily injuries sustained by one person. Coverage in the third case was extended to include coverage for loss of consortium under the "each accident" clause of the policy because the terms of the policy were ambiguous.[4] Under the specific language of the policy at issue, the court in *Bain* concluded that "the 'each accident' limitation applies when two or more persons suffer bodily injury in the same accident." *Id.* at 451.

As recognized in *Bain*, the uninjured spouse's loss of consortium claim could have fallen under the "each accident" limitation either through a direct policy provision or by inartful drafting. However, because of the specific language of the policy in *Bain*, the uninjured husband's loss of consortium claim was clearly derivative of his injured wife's claim. Neither *Bain* nor *Treichel* considered in any way the separate and controlling UIM provisions we have in this case, clearly stating that any person who is entitled to recover damages because of

---

[4] The three cases discussed in *Bain* are: *Allstate Insurance Co. v. Handegard* (App.1984), 70 Or.App. 262, 688 P.2d 1387; *Abellon v. Hartford Insurance Co.* (1985), 167 Cal.App.3d 21, 212 Cal.Rptr. 852; and *Bilodeau v. Lumberman's Mutual Casualty Co.* (1984), 392 Mass. 537, 467 N.E.2d 137. Collectively, they demonstrate that each case is decided under its own unique policy provisions.

bodily injury sustained by the insured, any family member of the insured or any other person occupying the insured's covered cycle, is entitled to a claim under the "each occurrence" limits of the Policy.

Under the UIM provisions of the Policy, if Louise can prove a case for severe emotional distress under Montana law, she has a right under the Policy to claim coverage up to $100,000 under the "each occurrence" limits of the Policy. Louise has not yet provided any evidence to support her claim for severe emotional distress.[5] Whether she can prove that claim and if so, the value of it, are issues of fact remaining for trial.

At this juncture, Louise is entitled to immediate payment of the monies owed to the Estate of Timothy King under the Policy. Upon payment of the $100,000, GEICO is entitled to a discharge of its Policy obligation only as it relates to the Estate of Timothy King. Louise may continue with her emotional distress claim under the each occurrence/each accident Part IV coverages. To the extent either party requests summary judgment beyond these declarations, such requests are denied.

---

[5] It would be for a jury to decide whether, on the evidence, King has in fact suffered severe emotional distress. The Montana Supreme Court has held that "[t]he law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it." *Renville v. Fredrickson*, 101 P.3d 773, 776 (Mont. 2004) (citing *Sacco*, 896 P .2d at 426).

23

## C.    Breach of Contract

Louise claims GEICO breached its insurance contract by withholding the $100,000 it admittedly owes the Estate of Timothy King unless King released any and all claims, except King's own bodily injury claims. GEICO counters that because it was seeking to completely satisfy its coverage under the Policy, under *Adair v. Safeco Ins. Co.*, 2010 WL 2079542 (D.Mont. 2010), it was appropriate to request the release.

The General Release that GEICO presented to Louise with the payment of the $100,000 owed to the Estate of Timothy King identifies the "Releasor" as "Annie Louise Holmes King, P.R. for the Estate of Timothy W. King, its heirs, executors, personal representatives, successors, and assigns." However, that same General Release then seeks to reserve, on behalf of Louise, only her bodily injury claims "when it was evident she had none." Her stand alone claim, not requiring bodily injury to Louise, was not recognized in any sense. GEICO's immediate duty was to pay the "each person" limits to the Estate once liability and damages were established for wrongful death, and to merely reserve its defenses to Louise's additional claims, if any, against the secondary "each occurrence" limits. GEICO cannot seek refuge in the holding of *Adair v. Safeco Ins. Co.*, 2010 WL 2079542 (D.Mont. 2010), because GEICO was not discharging its entire obligations to both

Louise, and the Estate of Timothy King, under the terms of the Policy by the payment of $100,000.

Accordingly, Louise's motion for summary judgment on her contract claim is granted, and GEICO's request for summary judgment on this Count is denied.

## D. Montana Unfair Trade Practices Act

Count Three of Louise's complaint asserts GEICO violated MCA § 33-18-201(1), (4), (5), (6), (9) and (13), causing Louise to suffer injury, harm and loss. Louise requests summary judgment in her favor on her claim GEICO violated MCA § 33-18-201(1), (6) and (13); GEICO seeks summary judgment in its favor as to all of Count Three.

Louise does not appear to oppose GEICO's request for summary judgment under MCA § 33-18-201(4), (5) and (9), and in any event, such provisions do not fit the facts of this case. Thus, GEICO's request for summary judgment as to MCA § 33-18-201(4), (5) and (9) is granted and those claims are dismissed. Regarding the remaining claims, under Montana law, an insurer may not be held liable for violating Montana's Unfair Claims Practices Act "if the insurer had a reasonable basis in law or in fact for contesting the claim or the amount of the claim, whichever is in issue." MCA § 33-18-242(5). Under the totality of facts in this case, the Court is not prepared to say as a matter of Montana law that

GEICO's actions were so completely unreasonable as to leave GEICO defenseless. That is a decision for the jury.

For the reasons discussed above, the Court finds that the Estate of Timothy King is entitled to immediate payment of $100,000 from GEICO, which amount represents the stacked "each person" limits available under the Policy. Louise is entitled to assert her severe emotional distress claim up to the additional $100,000 "each occurrence" limits of the Policy. Under Count Three, Louise's claims that GEICO violated MCA § 33-18-201(4), (5) and (9) are dismissed. Her claims under MCA § 33-18-201(1), (6) and (13) present fact issues for trial, and GEICO's motion as to these provisions is denied.

IT IS SO ORDERED.

Dated this ___11___ day of December, 2013.

RICHARD W. ANDERSON
UNITED STATES MAGISTRATE JUDGE