**PROTECTED DOCUMENTS**

L-DiFE
Jan 18
SB01201?

## Bohyer, Erickson, Beaudette & Tranel, P.C.

### Attorneys at Law

Jesse Beaudette
John E. Bohyer
Erin M. Erickson
Nathan A. Fluter
Wilton H. Strickland*
Paul N. Tranel

*Also admitted in Florida

April 20, 2012



RECEIVED
APR 23 2012
By_____

Ms. Annie Louise King
720 Revolution Ave.
Billings, MT 59105-1518

P G-19

Re:   Insured Timothy King, deceased
      Claim No. 0372130260105015
      Date of Loss 8/27/11
      BEBT File No. 6730

Dear Ms. King:

I have been retained by GEICO Indemnity Company ("GEICO") with respect to the claim that you have made on the policy due to the tragic death of your husband, Timothy King. Ms. Janaé Estill of GEICO has been corresponding with you and she asked that I respond to your letter of March 15, 2011, so that we can get the matter resolved to your satisfaction.

I have been provided with the correspondence that you and Ms. Estill at GEICO have exchanged. It appears that there is some confusion as to what type of release document, if any, must be signed by you as Personal Representative of the Estate of Timothy King. In that regard, thank you for providing your Letters of Appointment as Personal Representative. Initially, GEICO apparently indicated that it needed a full release of any and all claims that you might make as a result of Mr. King's death. You responded that you would not sign a release but would execute an "Acknowledgment and Receipt of Underinsured Motorist Payment."

To be clear, you are not being asked to release any and all claims that you as an individual may have under the underinsured motorist coverage of the GEICO policy. The only release that needs to be executed by you is a release for the wrongful death and survival claims that could be advanced by the Personal Representative. This release is in return for the $100,000 stacked "per person" limit available under the GEICO policy. There is a $200,000 "per accident" limit under the policy as well. You, individually, are entitled to reserve your own bodily injury claim and to assert that claim if you believe it exists.

If my letter does not make sense, I ask that you please consult with your own counsel on the matter. In this regard, there are two cases that are pertinent to the

ph  406 532 7800
fax 406 549 2253

283 W Front, Ste. 201
PO Box 7729
Missoula, MT  59807

**EXHIBIT**
**501**
1:12-CV-92-RWA

D 000110

**PROTECTED DOCUMENTS**

Ms. Annie Louise King
April 20, 2012
Page 2

release and payment issue. *State Farm Mut. Auto Ins. Co v. Bowen*, 34 Mont. Fed. Rptr 1 (D. Mont. 2005, Judge Cebull); 247 Fed. Appx. 901 (9th Cir. 2007); and *Adair v. Safeco Ins. Co. Of Illinois*, CV-09-31-BU-RKS (D. Mont. 8/31/10, Judge Strong) (Order *in Limine*). I have attached copies of both of these decisions so that you may review and discuss them with your lawyer as needed. In short, the two decisions allow the recovery of one "per person" limit—here $100,000—under the underinsured motorist coverage of the policy for the wrongful death and survival claim. As well, because the $100,000 is full performance with respect to those claims, the insurer is entitled to a release for those claims as discussed in the *Adair* opinion.

GEICO is not asking that you release any *individual* claim for bodily injury that you believe you may have under the insurance policy in question.

I have enclosed the $100,000 settlement check from GEICO to be made payable to Annie Louise King, as Personal Representative of the Estate of Timothy King. As well, I enclose a copy of the release that will need to be signed solely with respect to the wrongful death and survival claims that are advanced due to the death of Mr. King. Within the release, you will note that I have included language whereby "Annie Louise Holmes King specifically reserves unto herself any other claim for own bodily injury, and such claim is not released under the terms of this document." After signing and returning the release to this office, you are free to cash the settlement check. I am enclosing a self-addressed, stamped envelope for your convenience.

If you wish, please feel free to consult with your own legal counsel. In this regard, my office checked with Todd Gunderson, the attorney who is handling the probate matter, to see if he is representing you on this insurance issue. He indicated that he is *not* handling this matter for you, and does not know who is handling this matter for you, if anyone. While I am happy to discuss the matter with you, I think it best that you discuss the matter with your own counsel if you have questions.

Sincerely,

BOHYER, ERICKSON,
BEAUDETTE & TRANEL, P.C.

*John E. Bohyer , for*

John E. Bohyer

JEB/dlp
Enclosure
cc.    Janaé Estill
       GEICO INDEMNITY

D 000111
Exhibit 501, Page 2

**PROTECTED DOCUMENTS**

34 Montana Federal Reports                                                1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE ) | CV-04-63-BU-RFC |
| INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| CAROLINE BOWEN, Individually and as ) | |
| the Personal Representative of the Estate ) | |
| of MICHAEL BOWEN, ) | |
| ) | |
| Defendant. ) | |

## FACTS

On November 7, 2003, Michael Bowen and his wife Caroline Bowen were involved in a head-on automobile collision on US 191. As a result of injuries sustained in the collision, Michael Bowen died. Caroline suffered bodily injuries including abrasions to her face, a broken right arm, glass imbedded in her forehead, chest contusions, and post-traumatic stress disorder.

At the time of the accident, State Farm had issued four automobile policies to Michael and Caroline Bowen, each of which provided underinsured motorist coverage with policy limits of $100,000 for "Each Person," and $300,000 for "Each Accident." Under the terms of the policy, State Farm agreed to pay "damages for bodily injury an insured is legally entitled to collect from the owner or the driver of an underinsured motor vehicle. The bodily injury must be sustained by an insured and caused by an accident arising out of the operation, maintenance or use of an underinsured motor vehicle." The policy contained the following "limits of liability":

> Under "Each Person" is the amount of all damages due to bodily injury to one person. "Bodily injury to one person" includes all injury and damages to other persons, including emotional distress, sustained by such other persons who do not sustain bodily injury. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person," for all damages due to bodily injury to two or more persons in the same accident.

**PROTECTED DOCUMENTS**

-2                                    34 Montana Federal Reports

Caroline Bowen, as personal representative of the Estate of Michael Bowen, requested State Farm pay $800,000 stacked "Each Accident" limits of underinsured coverage under the Bowens' policies for the wrongful death and survival claims. State Farm stacked the "Each Person" limits and paid $400,000 for the wrongful death and survival claims. State Farm is separately adjusting Caroline Bowen's own bodily injury and emotional distress claim.

On September 8, 2004, State Farm filed a declaratory judgment action in this Court seeking a judicial determination of whether the "Each Person" limit contained in the Bowens' policies applies when there are survival and wrongful death claims arising out of the injury and death of a single insured. On October 7, 2004, Caroline Bowen answered and filed a counterclaim. The parties have now filed cross-motions for summary judgment.

### LEGAL STANDARD

Summary judgment is appropriate if no material issues of fact are in dispute and a party is entitled to summary judgment as a matter of law. Rule 56(c), F.R.Civ.P. The fact that cross-motions for summary judgment are filed does not mean that summary judgment must necessarily be granted in favor of one party or the other. *Hall v. Allstate Ins. Co.*, 29 MFR 1 (2001). Instead, the Court must consider each motion separately, under the standards of Rule 56, to determine whether summary judgment is properly granted. *Id.*

### ANALYSIS

The parties are in agreement that the issue presented to the Court for decision is whether a survival and wrongful death claim fall under the "Each Person" or "Each Accident" limits of liability.

Judge Shanstrom has accurately and succinctly summarized the law in Montana on the issue of the interpretation of insurance contracts previously, stating:

The interpretation of an insurance question is a question of law. The language of the insurance policy governs its interpretation if it is clear and explicit. If ambiguities

**PROTECTED DOCUMENTS**

exist, they are construed against the insurer. Similarly, exclusions from coverage will be narrowly and strictly construed because they are contrary to the fundamental protective purpose of an insurance policy.

*Taylor v. State Farm*, 27 M.F.R. 417, 420 (2000) (citations omitted.)

The issue of whether a survival and wrongful death claim are subject to the "Each Person" limit of liability has not previously been addressed by a Montana court. Thus, the Court must attempt to discern what the Montana courts would do if faced with this issue. As a starting point in its analysis, the Court turns to previous interpretations of the "Each Person" clause by the Montana Supreme Court.

A.    PREVIOUS INTERPRETATION OF "EACH PERSON" CLAUSE.

Each party relies on a different Montana case for its position regarding the interpretation of wrongful death and survival claims under the State Farm policy. Specifically, State Farm relies on *Bain v. Gleason*, 223 Mont. 442, 726 P.2d 1153 (1986). In *Bain*, a husband and wife brought an action for injuries sustained by the wife in a vehicle collision. The husband, who was not present at the scene of the collision, brought a separate claim for loss of consortium. The insurance company contended that the consortium claim was included within the policy's "each person" limits of liability. The insured, while acknowledging that his loss of consortium claim was derivative from his wife's injuries, contended that the action for consortium loss was a "separate and independent cause of action which is the property of the impaired spouse," noting that the injuries to the wife are different than those suffered by the husband such that "the cause of action for loss of consortium in favor of the deprived spouse is an independent action which stands on its own footing." *Bain*, 223 Mont. at 448, 726 P.2d at 1156. The Montana Supreme Court disagreed, finding that even though the husband's loss of consortium claim was a distinct and independent cause of action, it was nevertheless subject to the "Each Person" limits under the policy because it stemmed from the same bodily injury sustained by one person in one

**PROTECTED DOCUMENTS**

-4                              34 Montana Federal Reports

accident. *Id.*

Plaintiff Bowen, on the other hand, relies on the Montana Supreme Court's decision in

*Treichel v. State Farm*, 280 Mont. 443, 930 P.2d 661 (1997) for her position that the "Each

Person" limitation does not apply to her wrongful death and survival claims. In *Treichel*, a

husband and wife were riding bicycles when the husband was struck by an automobile, and

subsequently died from injuries sustained in the collision.  The driver of the automobile was

insured by State Farm under a policy which limited coverage to $25,000 for "Each Person" and

$50,000 for "Each Accident."  The wife, Carolyn Treichel, submitted a claim to State Farm for

$50,000, contending that her emotional distress claim was separate and distinct from her

husband's claim.  State Farm paid $25,000 under the "Each Person" limits of liability,

contending that Carolyn's emotional distress claim was derivative of her husband's claim.

Specifically, before the Montana Supreme Court, State Farm argued that the "Each Person"

limits applied because "Carolyn's emotional distress resulted from [her husband's] injury," and

further relied on the *Bain* decision.

The Montana Supreme Court disagreed with State Farm, and distinguished *Bain* as

follows:

> In *Bain*, we said that "Each Person" limitation refers to all damages imposed by
> law by whomever suffered resulting from one bodily injury and one accident and
> that the "Each Accident" limitation only applies when two or more persons suffer
> bodily injury in the same accident.
>
> Unlike Carolyn, the plaintiff in *Bain* was not at the scene of the accident and did
> not witness the injuries to his spouse.  As the District Court pointed out in the
> case before us "[i]t is this personal, on the scene, direct physical and emotional
> impact which distinguishes emotional distress claims under *Sacco* from loss of
> consortium claims."  Carolyn was a separate person who received an independent
> and direct injury at the accident scene.

*Treichel,* 280 Mont. at 449, 930 P.2d at 665.

Clearly, both the *Bain* and *Treichel* decisions support State Farm and Caroline Bowen's

**PROTECTED DOCUMENTS**

respective positions to a certain degree. The issue then becomes whether wrongful death and survival claims are more like the loss of consortium claim encountered in *Bain* or the emotional distress claim in *Treichel*. In considering this issue, the Court looks to the treatment of this issue by other courts, as well as the place of wrongful death and survival claims in Montana jurisprudence.

**B.   TREATMENT OF WRONGFUL DEATH AND SURVIVAL CLAIMS BY OTHER COURTS.**

State Farm points to several cases from other jurisdictions which stand for the proposition that, under insurance policy limitations like those found here, the "each person" limit of liability applies to a wrongful death and survival action. For example, the New Jersey Supreme Court's recent case of *Vassiliu v. Daimler Chrysler Corp.*, 839 A.2d 869 (N.J. 2004) is very similar to the facts of this case. There, an automobile accident victim's surviving spouse brought wrongful death and survival actions against the driver. After judgment was entered in favor of the spouse on her claims, she filed a declaratory judgment action against her insurer for underinsurance benefits. Like Bowen does here, the insured in *Vassiliu* argued that the survival and wrongful death actions each qualified for separate per person coverage. The trial court agreed with the insured's position, reasoning that "wrongful death actions and survival actions are treated as separate and discrete actions affording different damages remedies to different parties, even though they may arise from the identical occurrence- the death of a family member from injuries sustained in a vehicular accident." 839 A.2d 866.

The New Jersey Supreme Court agreed with the district court that the wrongful death and survivor actions were legally distinct, but nevertheless concluded that "because plaintiff's survival and wrongful death actions are derivative of and dependent on the decedent's injuries, including his unfortunate death, those actions are subject to a single 'per person' limit in the liability policy." *Id.* at 868.

The result in *Vassiliu*, as far as this Court can tell, mirrors the result reached by every

PROTECTED DOCUMENTS

-6-                                    34 Montana Federal Reports

other court which has encountered the issue. *See McKinney v. Allstate Ins. Co.*, 722 N.E.2d 1125

(Ill. 1999) ("per person" limit of liability clause "clearly limited" all claims arising out of the

decedent's death to a single per person limit; *Geico Gen. Ins. Co. v. Arnold*, 730 So.2d 782

(Fla.Dist.Ct.App. 1999) ("each person" limit of liability clause not ambiguous and limited

wrongful death and survival claims); *Cradoct v. Employers Cas. Co.*, 733 S.W.2d 301 (Tex.App.

1987) ("per person" limit applied to person injured in accident, not other persons suffering loss

because of that injury). Thus, the precedence from other jurisdictions weighs heavily in favor of

State Farm's position.

C.      STATUS OF WRONGFUL DEATH AND SURVIVAL CLAIMS IN MONTANA.

        In *Swanson v. Champion Int'l Corp.*, 197 Mont. 509, 646 P.2d 1166 (1982), the

Montana Supreme Court discussed the treatment of both wrongful death and survival claims

under Montana law. As discussed in *Swanson*, a survival action is created by statute[1] and may be

pursued against the responsible party by his personal representative. 197 Mont. at 514, 646 P.2d

at 1169. The source of the damages recoverable in a survival action are personal to the decedent,

and therefore belong to the decedent's estate. They do not include any damages suffered by the

widow, children or heirs. *Id.*

        A wrongful death action, likewise, is an independent action created by statute.[2]

Generally, the proof of damages in a wrongful death cause of action will include loss of

consortium by a spouse, loss of comfort and society of the decedent suffered by the surviving

heirs, and the reasonable value of the contributions in money the decedent would have been

expected to make. *Id.*, 197 Mont. at 517, 646 P.2d at 1170. "The source of the damages

recoverable in a wrongful death action is personal to the survivors of the decedent. The damages

_____

[1] Mont. Code Ann. § 27-1-501.

[2] Mont. Code Ann. § 27-1-513.

**PROTECTED DOCUMENTS**

7

are not those of the decedent, but of the heirs by reason of his death." *Id.; see also Payne v.*

*Eighth Judicial District Court*, 313 Mont. 118, ¶ 8, 60 P.3d 469, ¶ 8 (2002) (wrongful death

claim compensates the heirs for the harm that they personally suffered as a result of the

decedent's death).

    D.    BOWEN'S WRONGFUL DEATH/SURVIVAL CLAIMS ARE DISTINGUISHABLE FROM AN
        EMOTIONAL DISTRESS CLAIM.

        After surveying Montana case law on the subject, it becomes apparent that a wrongful

death action is distinguishable from an emotional distress action. As stated by Judge Molloy:

> To prove the [infliction of emotional distress] claim the emotional distress must
> be "serious" or "severe" as those terms are defined by the Restatement (Second)
> of Torts § 46, comment j. The proof required is far different from the proof that
> must be shown to recover in a wrongful death case, or from the proof required to
> recover for mental or physical suffering in a personal injury case. The paramount
> issue can be characterized by reference to duty.

*Nelson v. Hawkins*, 24 M.F.R. 446, 45 F. Supp.2d 1015, 1021 (D.Mont. 1999) (internal citations

omitted).

        The distinction made by Judge Molloy is critical to the Court's decision in this case. Ms.

Bowen makes much of the fact that she was present at the scene of the accident and witnessed

her husband's injuries. Clearly, Ms. Bowen has a very legitimate emotional distress tort claim

under these facts. However, these facts are immaterial to Ms. Bowen's wrongful death claim. In

an infliction of emotional distress claim, the plaintiff must establish that the emotional distress

was a "reasonably foreseeable consequence" of the defendant's act. Under an emotional distress

claim, then, the duty runs directly to the party suffering the distress. In a wrongful death action,

by contrast, the duty does not run directly from the tortfeasor to the distressed party, but rather is

a consequence of the duty owed to the decedent. The Court finds that Ms. Bowen's reliance on

*Treichel*, and other emotional distress cases discussing the application of the "Bach Person"

liability limitation, is misplaced. A wrongful death action is simply not analogous to an

infliction of emotional distress claim.

**PROTECTED DOCUMENTS**

•8                                34 Montana Federal Reports

E.   THE MONTANA SUPREME COURT'S DECISION IN *BAIN* DICTATES THAT THE "EACH PERSON" LIMITATION APPLY TO BOWEN'S WRONGFUL DEATH/SURVIVAL CLAIMS.

Having distinguished Bowen's claims from the emotional distress claims in *Treichel*, the

Court is left with the *Bain* decision as guidance on this issue.  As noted above, in *Bain*, the

Montana Supreme Court held that a loss of consortium claim was limited by the "Each Person"

clause in the subject policy.  Under Montana law, the damages available in a wrongful death

action will include "loss of consortium" by the spouse.  *Swanson, supra.*

The Court concludes that extending the "Each Person" limitation from a loss of

consortium claim to a wrongful death claim is a natural and inevitable result under *Bain*.  This

conclusion is further bolstered by the fact that every other court faced with the issue before this

Court has concluded that the "Each Person" limitation applies to a wrongful death claim.  The

Court finds no ambiguity in the policy, and holds that State Farm was correct in applying the

"Each Person" limit to Ms. Bowen's wrongful death and survivorship claims.  Accordingly,

Plaintiff's motion for summary judgment (*Docket No. 10*) is GRANTED and Defendant's

motion for summary judgment (*Docket No. 21*) is DENIED.

Dated this 3rd day of August, 2005.

RICHARD F. CEBULL
UNITED STATES DISTRICT JUDGE

PROTECTED DOCUMENTS

Case 2:09-cv-00031-RKS   Document 89   Filed 08/31/10   Page 1 of 7

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

| | |
|---|---|
| DEZIRET ADAIR, | |
| | CV-09-31-BU-RKS |
| Plaintiff, | |
| vs. | ORDER |
| SAFECO INSURANCE COMPANY, | |
| Defendant. | |

In this diversity action Plaintiff seeks damages for alleged breach of contract and for violation of the Montana Unfair Trade Practices insurance statute in connection with an uninsured motorist claim.

The matter is set for trial to a jury beginning September 28, 2010.  The parties appeared for oral

Page 1 of  7

**PROTECTED DOCUMENTS**

argument on the pending motions in limine (C.D. 71, 74) on August 26, 2010.  The Court made preliminary rulings on each pending motion on the record.  After the hearing, counsel and the court met in chambers to discuss another issue.  The parties, through counsel, jointly asked for a pretrial ruling on a question of law.  The court agreed to consider doing so and granted the parties the time they requested, through Friday, August 27, 2010, to simultaneously submit additional authorities in support of their position.  Both parties have informally submitted those authorities.  After reviewing the record to see whether the court can determine the question presented, the court is prepared to rule.

The question presented requires interpretation of Montana insurance and contract law.  The parties' request for pretrial ruling is deemed a motion in limine; those standards are applied.  Luce v. U.S. 469 U.S. 38, 41.  The issue is whether evidence that Safeco demanded a release upon tendering payment of uninsured motorist policy benefits in full is admissible. Stated another way, the question is:

Page 2 of  7

**PROTECTED DOCUMENTS**

Assuming Safeco had otherwise met its duties under <u>Ridley v. Guarantee Nat. Ins. Co.</u>, 286 Mont. 325, 951 P. 2d 987 (Mont. 1997), did Safeco breach its contract of insurance with Ms. Adair or violate Montana's insurance Unfair Trade Practices statute, MCA §33-18-201, by seeking a release of all of Safeco's liability to Ms. Adair upon tendering payment of Safeco's unsured motorist limits in full?

Answering this legal question does not dispose of all remaining issues in the lawsuit. Guidance on this issue will help the parties and the court prepare for trial. The answer on the record before the Court is that Montana law and the insurance contract allow Safeco to seek a release under its uninsured motorist coverage if Safeco has satisfied all its obligations under that coverage.

The parties are familiar with the facts. Ms. Adair was insured and entitled to uninsured motorist coverage up to a limit of $25,000 under her mother's automobile liability insurance policy X5284929 with Safeco when Ms. Adair was injured in a motorcycle accident June 2, 2007. Ms. Adair was a passenger, the driver was uninsured, the uninsured motorist coverage applied. On November 27, 2007, Safeco agreed to pay the entire uninsured motorist limits but sent with the offer a

**Page 3 of 7**

**PROTECTED DOCUMENTS**

release.  Safeco required Ms. Adair to sign the release
as a condition of settlement.  C.D. 69-8,  p.1.  The
proposed release,(as is pertinent to this question)
included language

> ". . . I release said insurer from all
> obligation arising under the above policy to
> pay damages of the kind indicated above which I
> am legally entitled to recover from the owner
> or operator of each uninsured or underinsured
> motor vehicle involved in the accident. . ."
> C.D. 69-8, p.2.

Ms. Adair declined to sign a release with this
language.

To apply the Montana decisions on this issue it is
first useful to narrow discussion to the issues these
facts raise.  There is no dispute that Safeco fulfilled
its advance-pay obligations under Ridley v. Guarantee
Nat. Ins. Co., 951 P. 2d 989. See, C.D. 82, p.3.  This
case involves a dispute between Safeco and its insured
— a first-party case — rather than a dispute between
the insurance carrier for an alleged third party
tortfeasor and an allegedly injured plaintiff — a
third-party case.  The authority both parties cite here
discusses an insurer's right to demand a release for
its own insured under Ridley as a condition for making

**Page 4 of  7**

**PROTECTED DOCUMENTS**

advance payment of expenses to the third-party
claimant.  See, for example Shilhanek v.  D-2
Trucking. Inc., 2003 MT 122, 70 P.3d 721 (analyzing
Montana law in detail)(insurer must pay undisputed
medical expenses of third party claimant,  to the
limits of its coverage, without a release); Etter v.
Safeco Ins. Co. of Illinois, 192 F. Supp. 2d 1071, 1075
(D. Mont. 2002)(despite insured's demand not to do so
and insured's denial of liability, insurer must advance
pay expenses)(". . . The issue in this case is not
whether Safeco could require a release of its insured
as a condition of paying the policy limits. . .").

    Here Ms. Adair concedes that Safeco did not violate
Ridley (C.D. 82, p.3) and that Safeco was offering to
completely satisfy its coverage to Ms. Adair to pay up
to the limits of its uninsured motorist payment
obligation.  Safeco was not seeking to secure the
release of anyone other than itself. C.D. 69-10, p. 1-
3.  Safeco sought the release after having agreed to
pay the entire $25,000 it owed under the coverage. Of
that $25,000 payment, $5,5881 represented payment for
medical expenses and lost wages leaving over $19,000 to

                                      **Page 5 of  7**

**PROTECTED DOCUMENTS**

compensate Ms. Adiar for her general damages.  The
facts that provide the setting for the parties' legal
question do not raise the issues that faced the court
in <u>Shilhanek</u> or <u>Etter</u>.

Absent any statute or case law specifically
applicable to this situation, Montana contract law
controls.  A valid tender of full performance
extinguishes the obligation and thus entitles the
tendering party to a release.  See §28-1-201, 202 MCA;
§28-1-1601, 1602 MCA; <u>Audit Services v. Frontier West,
Inc.</u>, 252 Mont. 142, 150; 827 P.2d 1242, 1247-8
(Montana, 1992) (discussing effect of unconditional
offer to perform contract obligation).  Requiring a
valid release from a minor plaintiff after a tender of
full performance does not violate Montana law.  A
conservatorship approval did not breach the insurance
contract or violate Montana law.  C.D 43, P. 2; C.D.
63, p. 15; 72-5-401 et. seq., MCA; §72-5-409, MCA.

The facts here and the authorities discussed above
make the question simpler:  may an insurer require a
release from its insured of its liability on a
particular coverage as a condition of timely, final

Page 6 of  7

**PROTECTED DOCUMENTS**

payment in full for that coverage?  On this record,
Safeco is entitled to an order in limine precluding
testimony or argument that seeking a release under
these circumstances violated Montana law or the
contract.  If somehow the jury heard such evidence or
argument, Safeco would be entitled to a jury
instruction that its repeated requests for a release of
its policy obligations upon full payment of the
uninsured motorist coverage policy limits did not
breach its contract of insurance or violate its
obligations to Ms. Adair under §33-18-201, MCA.

    DATED this 31st day of August, 2010.

                        /s/ Keith Strong
                        Keith Strong
                        United States Magistrate Judge

Page 7 of  7

PROTECTED DOCUMENTS

## GENERAL RELEASE

| | |
|---|---|
| **RELEASOR:** | Annie Louise Holmes King, P.R. for the Estate of Timothy W. King, its heirs, executors, personal representatives, successors, and assigns. |
| **RELEASEE:** | GEICO Indemnity Company, and in addition, its officers, directors, subsidiaries, parent companies, attorneys, employees and agents. |
| **DATE OF CASUALTY:** | August 27, 2011. |
| **DESCRIPTION OF CASUALTY:** | Three vehicle collision on U.S. Highway 310 in Carbon County, Montana. Timothy W. King sustained fatal injuries for which Releasor seeks Underinsured Motorist benefits under Policy No. 4163-66-55-67 issued by GEICO Indemnity Company ("the Policy"). |
| **SUM OF SETTLEMENT:** | One-Hundred Thousand Dollars and No/100ths ($100,000.00), which represents a single per person stacked UIM limit under the Policy. |

1.  **Release**

    The undersigned Releasor acknowledges receipt of the above sum of money, and in consideration for payment of such sum, fully and forever releases and discharges Releasee, Releasee's, successors, assigns, agents, partners, employees, and attorneys from any and all actions, claims, causes of action, demands, or expenses for damages or injuries, whether asserted or unasserted, known or unknown, foreseen or unforeseen, arising out of the described casualty.

2.  **Partial Release**

    This Release is partial and applies only to one stacked underinsured motorist coverage limit as set forth in the Policy. Annie Louise Holmes King specifically reserves unto herself any other claim for own bodily injury, and such claim is not released under the terms of this document.

- 1 -

D 000127
Exhibit 501, Page 18

## PROTECTED DOCUMENTS

### 3.   Future Damages

Inasmuch as the injuries, damages, and losses resulting from the events described herein may not be fully known and may be more numerous or more serious than it is now understood or expected, the Releasor agrees, as a further consideration of this agreement, that this Release applies to any and all injuries, damages and losses resulting from the casualty described herein, even though now unanticipated, unexpected and unknown, as well as any and all injuries, damages and losses which have already developed and which are now known or anticipated.

### 4.   Apportionment of Payment to Lienholders

This payment shall be apportioned by Releasor among doctors, hospitals, all other health care providers and services, and any other individuals, companies, agencies, workers' compensation insurers or agencies, political subdivisions, or attorneys who may have valid liens or rights of subrogation or reimbursement, and Releasor agrees to indemnify Releasee from and against all such claims by such parties, including payment of attorney's fees and costs.

### 5.   Disclaimer

Releasors has carefully read the foregoing, discussed its legal effect with her attorney, understands the contents thereof, and signs the same of her own free will and accord.

This Release shall be binding upon Releasor's heirs, successors, personal representatives and assigns.

DATED this _____ day of April, 2012.

CAUTION: READ BEFORE SIGNING!

RELEASOR:

_____
ANNIE LOUSE HOLMES KING, AS THE PERSONAL REPRESENTATIVE OF THE ESTATE OF TIMOTHY W. KING

- 2 -

PROTECTED DOCUMENTS

STATE OF MONTANA            )
                           : ss.
County of Yellowstone      )

On this _____ day of April, 2012, before me, a notary public of the State of Montana, personally appeared ANNIE LOUISE HOLMES KING, known to me to be the person named in the foregoing Release, and acknowledged to me that she executed the same as her free act and deed, for the uses and purposes therein mentioned.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal the day and year in this certificate first above written.

(S E A L)

_____
NOTARY PUBLIC, State of Montana
*Printed Name*: _____
Residing at _____
My commission expires _____

- 3 -

**PROTECTED DOCUMENTS**



Bohyer. Erickson.
Beaudette. & Tranel pc

John E. Bohyer
Jesse B Beaudette
Erin M. Erickson
Nathan A. Fluter
Wilton H. Strickland'
Paul N. Tranel
Robin M. Turner"

'Also admitted in Florida
"Also admitted in Oregon

June 25, 2012

***Via Certified Mail — Return Receipt Requested***
Annie Louise King
720 Revolution Ave.
Billings, MT 59101

Re:   *Geico adv. King*
      BEBT File No. 6730

Dear Ms. King:

I sent you correspondence on April 20, 2012 which enclosed several items including a release prepared for your signature, and a settlement check for $100,000.00. I also sent you a follow-up letter on June 5, 2012 in the hopes of finally resolving this matter.

To date, I have not received the signed release nor have you cashed the check. I have not received any communication from you regarding your intentions in this matter. Will you please call this office at your earliest convenience to discuss this matter. Thank you.

Sincerely,

BOHYER, ERICKSON,
BEAUDETTE & TRANEL, P.C.

Nathan A. Fluter

NAF/dlp
Enclosure

EXHIBIT
**502**
1:12-CV-92-RWA

D 000146

PROTECTED DOCUMENTS

Sentry Insurance
P.O. Box 8039
Stevens Point, WI 54481



**SENTRY**
INSURANCE

January 30, 2012

Claim Number: 92A231512-503
Insured:         JANICE MOSICH
Vehicle:         2003 HONDA GOLDWING
Date of Loss:    08/27/2011

GEICO
ATTN: JANINE 0372130260105015
PO BOX 509119
SAN DIEGO CA 92150-9119

After completing our investigation, Patriot General Insurance Company has determined there was no coverage for Janice Mosich on August 27, 2011. Therefore, we are unable to offer coverage for this loss and respectfully deny your claim.

If you have additional information or wish to discuss this matter, please call.

Teresa Killian

Teresa Killian, Claims Rep Senior
Patriot General Insurance Company
A Member of the Sentry Insurance Group
800-547-7830 ext. 5664237 or 503-566-4237
888-729-2225 Fax
Teresa.Killian@sentry.com

92A231512-503

## PROTECTED DOCUMENTS

| Pol: 4163665567 | | | | DOL: 08/27/2011 | Insured: Timothy Wayne King | | Risk State: Montana | | Loss State: Montana | | |
Status: Open | Adj: Jenny Pautler | PIP Adjuster:

| Authoring Date | Body | Topic | Related To | Legal Action | Author |
|---|---|---|---|---|---|
| | own insurance | | | | |
| 10/14/2011 02:54 PM | 'Collision (2002 HONDA)' Exposure Transferred from SHAUN DIXON to IOANA SQUIRES. IP: Timothy King; IP Role: Insured, Injured Party, Owner, Driver, Related Contact Reserve Line(s): Collision User: Lawrence Knight(U23M45) Exposure/Reserve line owner: IOANA SQUIRES | Payments/Reserving | | | |
| 10/14/2011 03:18 PM | Document(s) Faxed to Progressive at 406-587-6065; by SHAUN DIXON U23078. | Correspondence | | | |
| 10/14/2011 03:20 PM | Adverse Carrier/Progressive was updated for IP Steven Mcclamey | Interested Parties | Steven Mcclamey | | |
| 10/14/2011 03:20 PM | rcf a/c progressive (steve mcmurray carrier) updated his ctc info in file adv claim reassigned adv situation adv need to know if they are extending any cvg he will begin cvg investigation adv per ok to share p/r sent p/r as copy by fax | Communication | | | |
| 10/14/2011 04:29 PM | located farmers claim online for cimnt bangardt's vehicle obc and spoke with adj MARK STEVENS (406) 370-2537 he is in the filed, did not have the claim in front of him, but was familiar with it adv i called to see if they know anyhting about coverage for the a/f veh- he said not much, they are treating it as um claim for his insrds b/c their atty faxed over a letter denying coverage for the loss- he does not know the specifics of that letter, but will share a copy with us farmers does not have p/r- adv i can share- his fax # is 406-728-8817 (the full copy we have came from insrd and has a post-it stamp with her information on it- i blacked that out b/f faxing it to farmers) | Communication | Farmers | | |
| 10/14/2011 04:44 PM | Adverse Carrier/AP-Farmers was updated for IP Vicki | Interested Parties | Farmers | | |

D 000256

Exhibit 503, Page 254

## PROTECTED DOCUMENTS

| Pol: 4163685567 | | | | DOL: 08/27/2011 | Insured: Timothy Wayne King | | Risk State: Montana | | Loss State: Montana | | |
Status: Open | Adj: Jenny Pautler | PIP Adjuster:

| Authoring Date | Body | Topic | Related To | Legal Action | Author |
|---|---|---|---|---|---|
| | Bangart | | | | |
| 10/14/2011 04:44 PM | Adverse Carrier/Farmers was updated for IP Vicki Bangart | Interested Parties | Vicki Bangart | | |
| 10/14/2011 04:44 PM | AP Farmers/Adverse Carrier, for IP(s) Vicki Bangart has been automatically synched with ContactCenter. The elements updated are WorkPhone. | Interested Parties | Farmers | | |
| 10/14/2011 04:51 PM | obc to annie king- spoke with her adv new adj and my ctc info adv um and uim cov on the pol- trying to confirm if there was any cov for cimnt which would mean a uim claim for her , or no cov, which would mean um- she u/s and was aware of that she said she's not confident that the driver has any insurance of his own- he has not ben cooperative with the police officers that are trying to determine that information as well. she said he is nto in jail, but assumes criminal charges will be forthcoming soon. adv as claims were just reported to the a/c we know of, will f/u with them in a few weeks for the outcome of their coverage investigations and we will keep eachother informed. no other ?'s for now | Communication | Annie King | | |
| 10/14/2011 05:00 PM | iso search- only one match by name and dob for paul moe- w/c claim from may 2011 obc to 406-425-2798 lvmtcb for "paul moe with yellowstone bean" adv calling to see if he had his own auto insurance on dol address in iso is different than what we have on file sent letter asking the same ? to address on file and po box 114 bridger, mt 59014 | General | Paul Moe | | |
| 10/14/2011 05:03 PM | The following fields were updated for IP Paul Moe:(Date of Birth, SSN/TaxID, Cell Phone) | Notes/History | Paul Moe | | |
| 10/14/2011 05:03 PM | Information was added for IP Paul Moe that includes: | Interested Parties | Paul Moe | | |

D 000257
Exhibit 503, Page 255

# PROTECTED DOCUMENTS

| PoI: 4163665557 | | | | DOL: 08/27/2011 | Insured: Timothy Wayne King | | Risk State: Montana | | Loss State: Montana | | |
Status: Open | Adj: Jenny Pautler | PIP Adjuster:

| Authoring Date | Body | Topic | Related To | Legal Action | Author |
|---|---|---|---|---|---|
| | 4 Pages. | | | | |
| 11/10/2011 11:27 AM | 'UM BI' Exposure Transferred from IOANA SQUIRES to Janae Estill. IP: Timothy King; IP Role: Driver, Owner, Injured Party, Insured, Related Contact Reserve Line(s): No Coverage-UMBI/UIMBI User: Jose Castillo(U09P61) Exposure/Reserve line owner: Janae Estill | Payments/Reserving | | | |
| 11/10/2011 11:27 AM | 'Collision (2002 HONDA)' Exposure Transferred from IOANA SQUIRES to Janae Estill. IP: Timothy King; IP Role: Driver, Owner, Injured Party, Insured, Related Contact Reserve Line(s): Collision User: Jose Castillo(U09P61) Exposure/Reserve line owner: Janae Estill | Payments/Reserving | | | |
| 11/10/2011 11:28 AM | mass transfer--tip exempt | Supervisor | Timothy King | | |
| 11/10/2011 04:13 PM | TITLE AND CERTIFIED COPY OF DEATH CERTIFICATE MAILED TO MACON SALV DEPT. | Property Damage | Timothy King | | |
| 11/14/2011 09:36 AM | Total Loss Paperwork 11/14/2011 added, Document ID 1273188686, Batch Number CM5_00013_11142011, and 4 Pages. | Correspondence | | | |
| 11/15/2011 08:25 PM | Rec ttl and death cert, sending docs to pool to transfer and hold ttl until unit is released for processing | Property Damage | Timothy King | | |
| 11/16/2011 02:09 PM | obc to 406-425-2798 lvmtcb for "paul moe with yellowstone bean" adv calling to see if he had his own auto insurance on dol | Communication | Paul Moe | | |
| 11/16/2011 02:11 PM | o/b ctc to Patriot Gen Ins co a/c for Janice Mosich 253.537.4000 pol > 475867825 claim > 92a231512 ph# > 800.547.7830 James Nichols x 5664226 lmomtcb -status of their covg investigation? | Communication | Paul Moe | | |
| 11/16/2011 02:15 PM | obc to employer yellowbean co (406) 662-3622 s/w Wanda she advised he wasn't employed w/ them at | Communication | Paul Moe | | |

D 000263
Exhibit 503, Page 261

**PROTECTED DOCUMENTS**

| Pol: 4163665567 | | | | DOL: 08/27/2011 | Insured: Timothy Wayne King | | Risk State: Montana | | Loss State: Montana | | |
Status: Open | Adj: Jenny Pautler | PIP Adjuster:

| Authoring Date | Body | Topic | Related To | Legal Action | Author |
|---|---|---|---|---|---|
| | the time of the ax last day was june 29th she doesn't have any new contact info to reach him | | | | |
| 11/22/2011 04:20 PM | *****slvg**** lbc frm niki johnson wt las ...wanted to know what was going on ..advsd to process ttl work only due to car is hold at police impound ..advsd will set up a move once vehicle is release ...niki advsd to reference stk# 8994810 for the ttl work only..she advsd to place this stk number in notes ..so that it will remind her she has the ppw already ...all t/s Emailed From: ALICIA WALKER Emailed To: ECALLAHAN@GEICO.COM; 11/22/2011 04:23 PM | Property Damage | Timothy King | | |
| 11/25/2011 04:40 AM | AP Mike Manweiler/Towing Agency, for IP(s) Timothy King has been automatically synched with ContactCenter. The elements updated are . | Interested Parties | Mike Manweiler | | |

D 000264
Exhibit 503, Page 262

## PROTECTED DOCUMENTS

| Pol: 4163665567 | | | | DOL: 08/27/2011 | Insured: Timothy Wayne King | | Risk State: Montana | | Loss State: Montana | | |
Status: Open | Adj: Jenny Pautler | PIP Adjuster:

| Authoring Date | Body | Topic | Related To | Legal Action | Author |
|---|---|---|---|---|---|
| 01/30/2012 04:42 PM | correction - title paperwork was sent to pool for title processing 11/18 | Supervisor | Timothy King | | |
| 01/31/2012 09:20 AM | ack hold file for insd ip 01 king | Property Damage | Timothy King | | |
| 02/01/2012 01:28 PM | Lets discuss this one, I see that Kemper denied and now Farmers may be the tort carrier. The actual issue is if this is going to be UM or UIM. Add it to the calendar for us to discuss. Emailed From: Christopher Teves Emailed To: JEstill@geico.com; 02/01/2012 01:36 PM | Supervisor | Timothy King | | |
| 02/01/2012 01:41 PM | Stacking Review Completed By Christopher Teves Exposure Coverage : UM BI Interested Party: Timothy King Decision : Approved Comments : UW confirms two vehicles listed on policy on DOL. | Coverage Notes/History Stacking | | | |
| 02/01/2012 03:12 PM | recvd call from patriot gen s/w james's teammate she sttd they did deny covg, she will send over ltr | Communication | Patriot General Insurance | | |
| 02/01/2012 03:22 PM | Chris, I'm more than happy to discuss but wanted to make sure it was clear, in this case farmers is the insurance company for the other innocent party involved in this loss. We have now recvd two denials from 3 possible sources of insurance for the tort driver (tort veh owner steve-kemper denied, veh owner steve also had a NNO pol w/ patriot gen ins, they have also denied) lastly we've been unsuccessful on reaching the actual tort driver paul moe to see if he has other insurance for us to consider. I agree our question will this be a UM or UIM exposure, however given the information to date, this appears to be going down the UM route. I've sent another letter to Paul Moe today just to again try to roll out any chance of him having his | Coverage | Timothy King | | |

D 000271
Exhibit 503, Page 269