# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| **LOUISE KING, individually, and as Personal Representative of the Estate of Timothy King,**<br><br>Plaintiff,<br><br>v.<br><br>**GEICO INSURANCE COMPANY,**<br><br>Defendant. | Cause No. CV **12-92-BLG-RWA**<br><br>ORDER |

## I. INTRODUCTION

On December 11, 2013, the Court entered an Order granting a motion for summary judgment filed by Plaintiff Louise King ("King"). Thereafter, King filed the pending Motion for Award of Attorney's Fees on January 7, 2014, seeking an award of fees and costs in the amount of $50,727.88. (Doc. 59.) GEICO opposed King's request for fees. The Court held King's request for fees in abeyance pending trial, which was held February 24, 25, 26, and 27, 2014, in Billings. The jury returned a verdict in favor of King. Following trial, the Court entered an Order on March 3, 2014, granting the parties time to file supplemental memoranda on the fee issue and on another matter not germane to the fee issue. On March 13, 2014, King's counsel L Randall Bishop ("Bishop"),

1

instead of filing a supplemental memorandum, filed a Supplemental Declaration seeking an additional award of fees in the amount of $63,735. On that same date, King's counsel John Heenan ("Heenan") filed a Declaration requesting fees of $30,900. GEICO filed a supplemental memorandum on March 31, 2014, opposing the fees requested.

II. FACTUAL BACKGROUND

GEICO issued a motor vehicle liability policy numbered 4163-66-55-67 ("the Policy) to Timothy King which covered two motorcycles. The Policy was in effect on August 27, 2011, when Timothy King was involved in a motorcycle collision that resulted in his death.

The driver who caused the accident that resulted in Timothy King's death was an underinsured driver within the meaning of the Policy. After learning that the driver who caused the accident was underinsured, Timothy King's spouse, King, contacted GEICO and requested payment of all underinsured motorist ("UIM") benefits due and owing under the Policy. GEICO offered to pay the Estate of Timothy King the full "each person" limits of $100,000 (two stacked $50,000 coverages) in exchange for a release of all other claims under the GEICO policy. King declined GEICO's offer, and instead, in a letter dated February 29, 2012, agreed to give GEICO a signed acknowledgment of receipt of payment.

GEICO subsequently retained legal counsel in Montana for further assistance with the claim. After consultation with Montana legal counsel, GEICO issued a check to the

2

Estate of Timothy King for $100,000 which was sent by GEICO's legal counsel to King on April 20, 2012. GEICO's counsel explained in a letter that accompanied the check that GEICO was seeking a release of the wrongful death and survival claims that could be advanced by the Personal Representative, and further explained that GEICO was not seeking a release of King's own bodily injury. Consistent with the letter, GEICO's counsel also sent King a general release which identified the "Releasor" as "Annie Louise Holmes King, P.R. for the Estate of Timothy W. King, its heirs, executors, personal representatives, successors, and assigns." The release reserved unto King "any other claim for own bodily injury," but made no mention of reserving any other type of claim, such as her severe emotional distress claim.

King did not deposit GEICO's check or respond to GEICO's offer of payment. Instead, King commenced this action on June 18, 2012, in the Montana Thirteenth Judicial District Court, Yellowstone County, to obtain the UIM benefits available under the Policy issued to Timothy King by GEICO. On December 11, 2013, in response to competing motions for summary judgment, the Court concluded that King, who was married to Timothy King on the date of the accident, but who was not involved in the accident, did not witness the accident, and did not suffer any bodily injury as a result of the accident, was a covered person under the Policy who could assert a stand alone emotional distress claim. The Court also ruled that King was entitled to the immediate payment of the $100,000 owed to the Estate of Timothy King, and that GEICO had

3

breached its insurance contract by requiring King to sign a release before it would pay King the $100,000 that GEICO admitted owing to the Estate of Timothy King.

King's counsel filed the pending Motion for Award of Attorney's Fees on January 7, 2014. The affidavit of King's counsel asserts he spent 143.8 hours over a period of two years and four months on legal work relating directly to issues that resulted in the entry of this Court's summary judgment ruling. (Doc. 59-1.) The affidavit also includes $397.88 of litigation costs for prosecuting Counts One and Two of King's complaint against GEICO. GEICO opposed such request. As noted earlier, King's counsel is now seeking additional fees of $94,635.

## III. ANALYSIS

A federal court sitting in diversity applies the substantive law of the forum state to state law claims. *Mason and Dixon Intermodal, Inc. v. Lapmaster Intern. LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011). Here, the Court applies Montana law.

"Montana follows the general American Rule that a party in a civil action is not entitled to attorney fees absent a specific contractual or statutory provision." *Mountain W. Farm Bureau Mut. Ins. Co. v. Brewer*, 315 Mont. 231, 69 P.3d 652, 655 (2003) (citing *Mountain W. Farm Bureau Mut. Ins. Co. v. Hall*, 308 Mont. 29, 38 P.3d 825, 828 (2001)). Under the "obligatory insurance exception," Montana case law recognizes courts may award attorneys' fees when "the insurer forces the insured to assume the burden of legal action to obtain the full benefit of the insurance contract...." *Riordan v. State Farm Mut.*

4

*Auto. Ins. Co.*, 589 F.3d 999, 1006 (9th Cir. 2009) (quoting *Brewer*, 69 P.3d at 660). The exception only applies when the insured prevails. *See Brewer*, 69 P.3d at 654.

GEICO opposes King's request for fees on several grounds. First, in its opposition filed January 21, 2014, GEICO argues that King's request for fees is premature under Rule 54(d)(2), because fees can only be awarded after entry of judgment. FED.R.CIV.P. Rule 54(d)(2)(A) states that, "[a] claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." The motion must be filed "no later than 14 days after the entry of judgment." FED.R.CIV.P. 54(d)(2)(B)(i). This objection is, as GEICO concedes in its supplemental brief filed March 31, 2014, moot because Judgment in King's favor was entered on March 3, 2014.

GEICO next objects to King's request for fees arguing that the hourly billing rate of $350.00 charged by Bishop and $300.00 charged by Heenan is unreasonable and should be reduced. King's and GEICO's counsel have since agreed, as reflected in a stipulation filed April 16, 2014, that "[i]n the event the Court awards attorney's fees to Bishop and Heenan, the hourly rate shall be $350.00/hour and $300.00/hour, respectively." Aside from the stipulation, the Court specifically finds in this case that the rates claimed by these counsel are reasonable in fact.

In its third and fourth objections, GEICO's counsel argues that King's counsel has not demonstrated that the number of hours of attorney's fees are reasonable on their face

or based on the historical record established by Kings's counsel and further argues that any award of attorney's fees should be reduced because King's counsel did not keep contemporaneous billing records. King's counsel claims to have spent a total of 143.8 hours in the twenty-eight months prior to January 7, 2014, pursuing the claim against GEICO at a total cost of $50,330.

The party seeking fees bears the burden of submitting detailed time records justifying the hours claimed. *Chalmers*, 796 F.2d at 1210. Contemporaneous records of hours worked are preferred in the Ninth Circuit. *Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000). However, it is permissible to base a fee request on reconstructed records developed from litigation files, but doing so may "provide the district court with a reason to reduce the fee." *Id*.

Bishop has clearly reconstructed his time records, as is permitted. However, by his own admission, Bishop is seeking fees from GEICO for a period of time when he was not King's counsel. King testified during trial that she consulted Mr. Bishop on this matter shortly after she was asked to sign the Release by GEICO in April of 2012. Transcript volume 2, page 320. King explained that she consulted with Bishop as early as October of 2011, as a friend, p.331, and was generally keeping Bishop abreast of the developments with GEICO in January and February of 2012. King admits she received unpaid gratuitous advice from Bishop and that Bishop drafted an acknowledgment of receipt that she sent to GEICO on February 29, 2012. Transcript v.2, p.332, 343. During

trial and in an objection to questioning by GEICO's counsel about the acknowledgment of receipt, Bishop emphatically stated there was no attorney/client relationship between himself and King in February of 2012. Bishop also asserted during trial, outside the presence of the jury: "I never asked my client for pay for one minute of that time. Nothing. Not even a contingent fee, Fagan. Nothing. I am asking you to pay for that time, because you forced me to put it in." King testified that she believes she formally retained Bishop in May of 2012.

In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the United States Supreme Court explained the standard for hours claimed:

> Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."

Bishop was not retained by King until May of 2012, and thus, it would not be proper for Bishop to bill King for friendly or gratuitous services provided prior to that date. Because Bishop could not bill King for the services provided prior to May of 2012, the Court finds that he also cannot bill GEICO for such services. In other words, Bishop is not entitled to any fees for services performed on behalf of King between September of 2011 and May of 2012, when there was no attorney/client relationship. Consistent with the Supreme Court's reasoning, as cited above, that "[h]ours that are not properly billed to

one's client also are not properly billed to one's adversary[,]" *Hensley v. Eckerhart*, 461 U.S. at 434, the Court declines to award Bishop's fee for services that may have been performed prior to his formal retention by King.

In a reply filed February 3, 2014, at docket no. 76, Bishop attached time records relating to his 143.8 hours of work. Those time records show that King's motion for attorney's fees includes 20 hours of work performed by Bishop prior to May of 2012. Those hours multiplied by Bishop's hourly rate of $350 reflects that Bishop performed $7,000.00 of work prior to the date he was retained by King. The pre-retention fees of $7,000.00 are disallowed. No fees are allowed to Heenan for the summary judgment work pursuant to Bishop's declaration filed January 7, 2014, stating "Plaintiff is not seeking any fees related to Mr. Heenan's work."

This leaves remaining the issue of the supplemental fees requested by Bishop and Heenan in March of 2014, totaling $94,635.00 for work performed after the Court's entry of summary judgment establishing coverage. During the latter time frame, as correctly argued by GEICO, King and GEICO litigated the amount of King's claim and not whether King had insurance coverage. That issue had already been decided by the Court.

Montana's obligatory insurance exception to the American Rule regarding entitlement to attorney's fees is narrow, and under the facts of this case, only applies to King's declaratory judgment action on whether she could assert a stand alone emotional distress claim. The narrow insurance exception does not apply to the trial phase of this

case, where the issue was not whether King had coverage, but rather, was the amount of King's emotional distress claim, and whether GEICO had violated Montana's Unfair Trade Practices Act. For the reasons discussed above,

IT IS ORDERED that GEICO shall pay King's counsel fees in the amount of $43,330, together with associated costs of 397.88, for a total of $43,727.88. The judgment entered herein is supplemented accordingly.

Done and dated this 5th day of May, 2014.

    /s/ Richard W. Anderson
RICHARD W. ANDERSON
UNITED STATES MAGISTRATE JUDGE